May it please the Court, counsel. Good morning. I'm Harriet Leavitt. I represent Mr. Quinones-Gutierrez. Before I begin my argument, I would like to just state that as to Argument 2, which is the Ammaline argument, I'd like to submit that matter on the brief. I believe that it's adequately covered, and I would like to address Argument 1, which is the entitlement of the defendant to a jury instruction regarding official restraint. I submit to the Court that under the facts of this case, there was sufficient evidence to warrant the giving of an instruction on official restraint. Meeting your client's testimony, the officer comes up behind me, grab you by the hand, and then he tells me, how come you didn't ran? Quote, I was being watched the whole time that he saw us when we came through the hole. You say that's enough to get at least an instruction? It's not just limited to that, Judge Trott. I'd like to point out the fact that from the government's own testimony, there's ample evidence of official restraint to warrant that instruction. First of all, the area is right by the border fence. It was only feet from the crossing point. It was only a minute or two. Yes. And there were 25 surveillance cameras in that immediate area. There was a dispatch to Agent McNamara and other Border Patrol agents upon seeing individuals at that fence, and the agents were there within a very short time. These are Border Patrol agents on bicycles who drive right up, and by the time Mr. Quinones Gutierrez is found, he and the others are already hiding in the bushes, which indicates that the agents came up very quickly. Otherwise, why would they seek cover if they hadn't gotten there very quickly? So he's within seven yards of the boundary fence and two minutes after he's entered. That's according to his testimony, but I submit that is supported by the testimony of Agent McNamara, that it was within a very short time. This is a quirky rule. As I read the record, the judge didn't seem to be aware of it going into the case. Is that right? I think you're right. I think you're right. It kind of caught the judge off guard. I think you're right. It's counterintuitive. And yet the judge allowed defense counsel to argue it, and why would you allow a man to argue that issue to the jury if you did not believe that there was at least some evidence to support that argument, which, again, is kind of counterintuitive to the denial of the instruction. If you say there's no evidence, and that was the judge's words, there's no evidence to support the instruction, then you're repeating yourself. The judge didn't have any responsibility given a jury instruction unless there's proposed a correct jury instruction. Your position you'd have to take is that your instruction that was proposed was a correct statement of the law. But even that instruction is pretty far afield. Whatever judicial restraint is, I'm not sure the jury would understand what judicial restraint is. And that was what the instruction asked the alien be free from judicial restraint. In addition, it's pretty broad, isn't it? Freedom to go at large and mix with the population. Where's that come from? Well, it came from the law. Why is this? We wouldn't even get to your issue unless there was a proper instruction. How can you argue this is a proper instruction of the law? Well, it was pretty close. And I agree with you that the instruction that Mr. Navidad proposed was a bit troublesome. And I much prefer the instruction that's in the Court's recent case of Bello-Bahana, which I believe Mr. Furco is submitting in a 28J. But nevertheless, getting back to your question. That's what we have. Right. I'm sitting there as a trial judge. Counsel comes in and gives me an instruction which is obviously wrong. I'm not going to give it because I'll be reversed. Your side asked for time to rewrite it, and that was denied. Is that correct? Yes. It was denied. And I agree with the Court that it could have been phrased a lot better. But Mr. Quinones-Gutierrez is the one who's penalized here. And I think that. Don't hurt the client for the sin of the lawyer. Is that what you're saying? Yes, that's exactly what I'm saying. This language is amazing. Judicial restraint can be unbeknownst to the alien such as surveillance. I mean, talk about a model of plain language. Well, I'm glad I'm not the trial lawyer, Your Honor. But nevertheless, I think that the Court is charged with knowing the law. And certainly once the jury came back and asked for instruction. Wait a minute. I just didn't quite get that. You didn't like that one. When I was a trial judge, it seemed to me that counsel had the responsibility of providing what you're saying, that we're going to reverse the trial judge in this I'm saying that trial counsel gave an instruction, which I agree with you, was inadequate. But by that point in time, after the trial court said you can argue this issue to the jury, and then the jury comes back with a question asking for instruction on the law of official restraint, by that point in time, the trial judge should have taken the option of either instructing both counsel to submit a more appropriate instruction or giving one of its own. That's what I'm suggesting. And, again, I am saying don't penalize Mr. Quinones Gutierrez, who gets nabbed two minutes after he gets in the country seven yards from the border fence for the errors of trial counsel. And I do think that under the facts of this case, there was sufficient evidence to merit an appropriate instruction. It is unfortunate, indeed, that trial counsel did not provide one in a timely manner and one that covered the law correctly. You know, trial pointer, the first thing you're supposed to do as a trial lawyer is look at the instructions, not the last. Yes, you're right. Most lawyers wait until the end, and then it's a scramble, and you get in this kind of a mess. Yes, and you're right, Your Honor, and considering that this was the crux of his defense, he absolutely should have had a proper instruction prepared in advance. And I can't accommodate that. Yes, you are right. I would like to reserve the rest of my time for rebuttal, if I may. Fairly. Vercoe. Good morning. May it please the Court, my name is George Vercoe. I'm an assistant U.S. attorney from the District of Arizona representing the appellee. I would acknowledge at the outset that this case is a case that is subject to the limited Ammaline remand for resentencing, but that should be the extent of the remand in this case. The difficulty that I've got with this case, let me just get your response to it. It, however peculiar the doctrine of official restraint is, and to me it's very mystical, you have evidence here, and it's thin, but you've got evidence that the customs agent told the defendant that he was being watched the whole time, that he saw the group of aliens come through the hole, he saw the defendant walk back and forth, and he saw the defendant by the bushes. So it would seem to me, however implausible that may be or however unbelievable it might be, it is evidence that the defendant was under continuous surveillance the whole time. I don't get the concept of letting an argument go forward on a legal concept without a disinstruction to the jury to guide their understanding of what's being argued to them, and then the – but even if that were okay, the jury comes back in and says, what's this official restraint thing, and gets no answer. At that point in time, whether the instruction misstated the law by using judicial instead of official or not, it seems to me there has to be some answer with respect to what that word or concept means. Thank you. Let me address the last portion, the last part of your question first, and that is the instruction that the question that the jury came back with indicating that they wanted some guidance from – with respect to that. And I think that that really falls under the category of invited confusion, because Judge Zapata clearly told the defense counsel that he was not going to give that instruction. He said – and he gave them an explicit warning, and the warning is on page – he gave them an explicit warning that if you want to argue something that is not going to be backed up by an instruction, then that's your – it's your case. This is on page 7 of the July 1st transcript. You know, if you wish to argue to the jury, I suppose I will let you argue it. I don't know where that goes. I mean, you have no law to back you up on that. So Judge Zapata gave him an explicit – That's wrong. That's dead wrong. That's just dead wrong. So if that's wrong, then it's the judge at that point who's making the error. And why is the government sitting on its hands? The government objected, Your Honor. The government says that he should not be allowed to argue something that is not – for which there's not going to be a jury instruction on. You believe his testimony, and add it to the other facts, isn't it clear that he has a legitimate defense of not exceeding official restraint? No, Your Honor. And I think you have – and that gets back to – The officers were watching him the entire time. Is he in official restraint according to our case law? No. Yes. If he is – That's what he said. He said the officer told me that we were watching you the entire time. If that's true, he has a good official restraint, a lack of official restraint. That would be correct, Your Honor. I'm sorry for interrupting. Go ahead. That would be correct, Your Honor, if that's all that the defendant testified to. On page 177 of the transcript, he does say that I was being watched the whole time. He's relaying what Agent McNamara had said. He saw him walk back and forth. But then he goes on to elaborate what he meant by that. He said that he was sitting against the hill, that he was lying – I'm sorry, not sitting. He was lying down, excuse me, against the hill. And then the key portion comes on the following page of the transcript, page 178, where he says I was on the side of the hill and he, he meaning McNamara, came behind the hill. I was on the side of the hill and he came behind the hill. That has to mean that McNamara did not have him under constant surveillance as required by Pacheco-Medina. Do you have something in the record that tells us the size of the hill and where he was standing and the rest of that? Yes. That comes from Agent McNamara about that the hill was – that he was actually in a ravine about 12 feet down covered by brush and things of that nature. Well, what I'm suggesting to you is that the only way that this doesn't make sense that you ought to have an instruction is if it's impossible for McNamara to have seen, because if the jury believes that McNamara said he saw him from the beginning, then he was under official restraint and he goes scot-free. And that was – of course, the jury may not believe him, but if he has that evidence, McNamara said he had me under observation from the beginning, then he's – that's official restraint. So you're saying that there's other evidence that shows it otherwise. But isn't that a jury question to decide whether or not he said it and whether it was true rather than us doing it based upon a record? The answer is no, Your Honor. And the reason is this. It's because it is not a credibility question. You consider – if you consider the defendant's testimony in total, which consisted of hearsay, double hearsay, mind reading even at times, and I acknowledge that that came into evidence and it is – it did come in substantively, but he only indicated how I – that I was being watched the whole time, that he saw us when he came in through the hall, that when he walked back and forth, and I was standing by a tree by the bushes. That's what he said. Then he later said that he was actually by a hill, which is where he was found. So if I'm watching you and I blink, no official restraint? No, Your Honor. That would – and I think Pacheco-Medina – And if I walk behind a tree and I lose sight of you for a fraction of a second, no official restraint? No. And if I'm coming up over a hill, all of a sudden it's a lack of official restraint? Yes. Because I think that that – that is distinguishable from Pacheco-Medina where – It's too cute by half, you know. Well, if that's true, then there was no basis upon which to allow argument on the issue, because you would be arguing something that's not supported by the evidence. That is true. It should – it should not have. But it was argued. There was argument on it, and it was, again, going back. The judge must not have thought that there was a total absence of any evidence to support the argument, because he said, go ahead. I would disagree with that, Your Honor, because it's – judges frequently give attorneys wide latitude in giving their closing arguments. Well, I understand, but the latitude has to do – is cabined by what's actually been presented inside the courtroom. I would also mention that that's not really an issue that's been raised on appeal, whether judge Zapata erred in allowing argument for which there was no – The judge didn't even seem to be aware of this doctrine going in. I would disagree with that, Your Honor. What happened is, at the last minute, this – this instruction came about at the very last minute. The government had rested, and it had – and then this is when it came up in the context of the Rule 29 judgment of acquittal, when he asked for the instruction. And then the attorney hands him a bad – one that badly misstates – he gave him 10 minutes to come up with an instruction. He gave him a bad – one that badly misstates the law, not only just the judicial restraint aspect of it, but also that it doesn't mention that he has to be under constant surveillance. It doesn't say anything about being under constant surveillance. In addition, the issue was renewed the following day. So the attorney had all that evening to come back with a properly worded instruction. Just a minute. You're talking now it came up when the jury asked a question. No, I'm sorry. If I said that, I missed. Well, you said the next day. What happened is, June 30th, the case is presented. The government puts on its case in chief, and the defendant testifies. After the government's case in chief is when the defense moves for the Rule 29 and at the same time requests the instruction that misstates the law. Okay. Then the following day is when. All right. I understand. Go flash forward now. The jury sends out a message. Regardless of how you characterize the argument, obviously in the minds of the jury there was a question. So they come out and they say, we want some law on what is official restraint. That's correct. And they get what? The judge says essentially he was not going to re-instruct them on that aspect. Re-instruct them on what aspect? On any aspect of official restraint. That he was standing by the instructions that the district court had previously given at the conclusion of the case. And that instruction was? It was the standard instruction that did not include official restraint. That it include all the normal elements, but did not include official restraint. But if there had been official restraint, would have been a defense, and the jury raised it, and the judge says I'm not going to talk to you about it, where does that leave us? Didn't the judge commit error by not instructing on that issue? No, because there was no evidence to support the. Aha. That's where you have to end up then. If the statement by McNamara allegedly made to the defendant was believed by the jury to be true, then there would be a basis for official restraint. I am. You have to get us to decide that the jury could not have accepted that statement as true, and therefore the facts were never before the jury. Right? No, Your Honor. I am out of time. May I answer your question? I wish you would. Thank you, Your Honor. No, because if you consider, the answer is no, because if you consider his testimony, he was, and I'm talking about the defendant's testimony, Agent McNamara did not have him under constant surveillance by his own admission. He says he came up from behind him, I was on the side of the hill, and he came behind the hill. There is no evidence that he had saw him the entire time. And he even said further, if you go back one page in the transcript. There is evidence he saw him the whole time. The defendant claims he said he did. Yes, but then he doesn't he's not I'm not trying to argue that it was a contradictory statement and that's a credibility issue to determine whether or not the defendant was lying or not. But he says that he was lying down. He was lying down against this hill. So he's lying down against the hill, and then Agent McNamara comes up behind him, according to the defendant's testimony. So he was out of sight for at least something, and it would have been more than the Pacheco Medina blink of an eye sort of situation. He would have been out of sight, and I would ask the Court to take a look at page 178 of the transcript. Unless there are any further questions, thank you very much. Okay. Thank you. I think this Court is correctly recognizing that this is a situation where the trial court suborned the fact-finding role of the jury and refused to give them instruction on how to apply the facts to the law. Once the jury asked for direction on the law of official restraint, that court was duty-bound to give the jury the instruction. And I'm not saying the Court should have given the instruction that Mr. Navidad submitted, but I am saying that there was ample opportunity for the Court to provide a proper instruction to that jury so that they could have properly considered the evidence and applied it. I also submit that once the Court allowed trial counsel to argue that issue, there is an implicit finding that there was, in fact, some evidence, and as Judge Reimer characterized it, even if it was thin, there was some evidence here of a defense of official restraint, and the Court made that finding by allowing trial counsel to make the argument to the jury. Mr. Navidad. Mr. Navidad, if you don't mind, if I may, I wanted to ask a question. Go back to the place where the jury comes out with a question. Yes, sir. The judge says, I'm not going to give any additional instructions. Did anybody object? The magic words were not uttered, but Mr. Navidad. That was the answer to my question. The answer is Mr. Navidad said, well, I did ask for an instruction a couple of times. I think he said I asked for an instruction twice, and I believe the record supports that he did ask twice for an instruction, but he did not say I object. The instruction? He asked for the instruction on official restraint on two separate occasions. He asked for it before. Before what? Before the jury? Earlier. The one that was in error. Yes. He asked the court to provide a judicial or an official restraint instruction at the close of the government's case, and at that time he had not provided one, which, as Judge Trott pointed out, he should have. Who is he? Is he a private lawyer, a public defender? No, he's a private attorney who – None of this happens if the lawyer comes in and does his or her job. That's right. That's absolutely right. What did he say to the – what did he say to the judge specifically when the judge says I'm not going to instruct anymore? What was his objection? May I find it in the excerpt of the record if you want to know specifically? Okay. At one point, Mr. Navidad stated that he could rewrite the instruction. At what point?  At that point, I apologize for not being able to find it immediately, Your Honor, but after page 54. Yes. Thank you. I'm sorry. I cannot find it. My recollection was that he said, I previously asked for one. And I'm sorry, I can't find it in this amount of time. Thank you. The problem is it doesn't exist in the excerpts. Would the Court like me to provide an additional excerpt? If we want it, we'll ask for it. Okay. We can do our work. Thank you. Thank you.  Thank you.
judges: Wallace, Trott, Rymer